# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3418

_____

United States of America,

        Plaintiff-Appellee,

v.

Josiah Williams, also known as
Little Man,

        Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Northern
District of Iowa.

_____

Submitted: July 9, 2008
Filed: March 2, 2009 **(Corrected 3/4/09)**

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Josiah Malachi Israel Williams stands convicted of one count of distributing, and aiding and abetting the distribution of, crack cocaine within 1,000 feet of a school. *See* **21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), 860, and 18 U.S.C. § 2**. On appeal, he argues the district court erred by: not entering a guilty plea; not reducing his sentence for acceptance of responsibility; increasing his sentence for obstruction of justice; finding the substance was crack (as opposed to "cocaine base"); not running his sentence concurrent to a state sentence; or, not considering the disparity between sentences for crack and powder cocaine. This court affirms the conviction, but remands for resentencing.

# I.

In fall 2003, Iowa special agent Darrell Simmons bought a gram of crack and some marijuana from Barb Shaurette. Simmons said he was "looking to move a lot of crack cocaine, make some money." Shaurette arranged for him to buy one ounce of crack and one ounce of marijuana from her supplier for $1,400.

On October 3, they met again. Shaurette called to find out where to pick up the drugs, and took Simmons to an apartment within 1,000 feet of a grade school. Maurice Malone answered the door, Shaurette asked for "Little Man," and defendant Josiah Williams appeared. Lamarr Parks also was present. Entering the apartment, Williams and Parks took Simmons to a bedroom, where Parks strip-searched him while Williams looked on. As Simmons re-dressed, Williams asked what he planned to do with the drugs. When Simmons replied "sell it," Williams said, "cool."

Simmons returned to the living room, sitting on the couch. In the kitchen, Williams and Parks assembled a bag of crack and a bag of marijuana. Williams emerged from the kitchen, placed the bags on the arm of the couch, and asked Simmons for $1,500. Simmons replied the deal was for $1,400. Williams countered, "No, $1,500." Simmons said he only had $1,400. Williams said "That's okay," without asking Parks or Malone. Simmons handed Williams $1,400 and put the drugs in his pocket. Simmons asked Williams for his phone number, and Williams said to get it from Shaurette. Simmons called later that day to complain that the crack was short eight grams; Williams promised to make it up next time.

On October 10, Williams agreed to sell Simmons two ounces of crack for $2,400. He took the money and promised to return with the crack, but never did. Williams pled guilty to theft in state court.

Williams was indicted for distributing, and aiding and abetting the distribution of, crack cocaine. He appeared before the court[1] without a plea agreement, attempting to plead guilty. The case went to trial, and Williams was convicted of distributing, and aiding and abetting.

## II.

Williams argues "the district court abused its discretion in refusing to accept Mr. Williams' plea of guilty to the aiding and abetting," claiming "a factual basis for the plea was established." *See* **Fed. R. Crim. P. 11(b)(3)**. Williams did not object at the plea hearing, and proceeded to trial – he notes the issue "may not have been preserved." This court reviews for plain error. *See **United States v. Vonn***, 535 U.S. 55, 58-59 (2002) ("a defendant who lets Rule 11 error pass without objection in the trial court must carry the burdens of Rule 52(b) . . . a silent defendant has the burden to satisfy the plain-error rule . . . ."). *See also* **Fed. R. Crim. P. 52(b)** ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

The plea hearing proceeded:

THE COURT: Let's turn our attention, then, to whether you are guilty. Tell me in your own words what you did on October 3rd, 2003, that makes you guilty of this offense.

THE DEFENDANT: I received a phone call from Barb Sherrette (phonetic) asking about some marijuana, and I agreed to meet and send it to him, and I was there when the crack cocaine was sold also.

---

[1] The Honorable John A. Jarvey, then Chief Magistrate Judge for Northern District of Iowa, now United States District Judge for the Southern District of Iowa.

THE COURT: And did you participate in that sale?

THE DEFENDANT: Yeah, part of. Aiding and abet, yes.

THE COURT: Okay, and in what way did you assist; did you get the people to come to that transaction?

THE DEFENDANT: Yeah.

The court inquired if the government was "satisfied with that as a factual basis for the plea." The government requested that Williams testify "a little bit more in detail."

THE COURT: In that factual basis for the plea, Mr. Williams, it says that once you were – you and the police officer were at the apartment where the crack was sold, it says that you placed an ounce of crack on the arm of the couch near Officer Simmons, Darryl Simmons, and asked for $1,500. Then Officer Simmons stated the deal was supposed to be for $1,400, and you accepted that money; is that true as well?

THE DEFENDANT: No.

THE COURT: And what about that is not right?

THE DEFENDANT: I didn't place the stuff on – I didn't place it on the couch, and I didn't receive the money. I only received $200 out of the $1,400.

THE COURT: And what did you get the $200 for?

THE DEFENDANT: An ounce of reefer.

The district court observed, "I don't think that supports a factual basis for the plea," and (at the defense's request) recessed for Williams to consult with counsel. Afterwards, his counsel agreed with the court that "we aren't going to be able [to] achieve a factual basis."

At trial, the four elements for aiding and abetting were listed in the jury instructions:

> In order to have aided and abetted the commission of distributing "crack cocaine," a person must:
>
> *One*, have known the crime of distribution of "crack cocaine" was being committed or going to be committed;
>
> *Two*, have knowingly acted in some way for the purpose of causing, encouraging or aiding the crime of distribution of "crack cocaine";
>
> *Three*, have intended that the crime of distribution of "crack cocaine" be committed; and
>
> *Four*, the offense involved 5 grams or more but less than 50 grams of "crack cocaine."

A "factual basis for a plea of guilty is established when the court determines there is sufficient evidence at the time of the plea upon which the court may reasonably determine that the defendant likely committed the offense." **United States v. Brown**, 331 F.3d 591, 594 (8th Cir. 2003). Williams responded "yeah" to the questions "did you participate in that sale" and "did you get the people to come to that transaction," but specifically limited his admissions to marijuana. As to the crack, he asserted mere presence – "I was there when the crack cocaine was sold also" – which is insufficient to show he likely committed the offense. *See, e.g.*, **United States v. Shoffner**, 71 F.3d 1429, 1433-34 (8th Cir. 1995) ("However, a defendant's mere presence, coupled with the knowledge that someone else who is present intends to sell drugs, is insufficient to establish membership in a conspiracy."). Williams did not admit bringing Simmons and Shaurette to the apartment to buy crack. At the time of the plea, he did not admit to: assisting Parks in the strip-search of Simmons; handling the money Simmons paid for the crack; placing either the crack or the marijuana on the couch; or, handling the crack at all.

-5-

A valid guilty plea "admits all of the elements of a criminal charge . . . [and] admits factual allegations in the indictment that form the basis for federal jurisdiction." **Mack v. United States**, 853 F.2d 585, 586 (8th Cir. 1988) (per curiam). Williams admitted none of the elements of aiding and abetting the distribution of (much less distributing) crack cocaine. The district court did not commit plain error by refusing to enter a plea of guilty.

## III.

At sentencing, the district court denied the motion for an acceptance-of-responsibility reduction, and imposed an obstruction-of-justice increase for perjury. Williams objected. This court reviews de novo the district court's application of the Sentencing Guidelines, and its factual findings for clear error. **United States v. Mathijssen**, 406 F.3d 496, 498 (8th Cir. 2005).

A sentencing enhancement for obstruction of justice is appropriate when the "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant conviction . . . ." **U.S.S.G. § 3C1.1**. "In order to base an obstruction of justice enhancement on a defendant's trial testimony, the district court must find by a preponderance of the evidence that he perjured himself." **United States v. Lewis**, 436 F.3d 939, 945 (8th Cir. 2006). "A district court applying the obstruction-of-justice enhancement for perjury must review the evidence and make an independent finding, by a preponderance of the evidence, that the defendant gave false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." **United States v. Ziesman**, 409 F.3d 941, 956 (8th Cir. 2005) (quotations and citations omitted).

Williams argues that his trial testimony, like his statements at the plea hearing, "was sufficient to convict him of the charged alternative of aiding and abetting." He contends the disputed facts ("whether Mr. Williams directly provided the 'crack

cocaine' to S/A Simmons and whether S/A Simmons handed the money directly to Mr. Williams") are immaterial. He concludes that, even if he is untruthful on these points, his testimony is not perjurious.

In its sentencing memorandum, the district court convincingly refutes this claim:

> During trial, Special Agent Simmons testified that Defendant placed one bag of crack cocaine and one bag of marijuana on the arm of the sofa where Special Agent Simmons was seated. When Defendant told Special Agent Simmons that the drugs cost $1,500, Special Agent Simmons told Defendant that he only had $1,400. Special Agent Simmons testified that Defendant stated that $1,400 was acceptable, so Special Agent Simmons handed Defendant $1,400. Special Agent Simmons's testimony was corroborated by Maurice Malone. Malone testified that the sale of crack cocaine and marijuana was put together by Defendant and Lamarr Parks and that Defendant physically exchanged the marijuana and crack cocaine for cash from Agent Simmons.

> In contrast, Defendant testified that he did not bring a bag of crack cocaine to the living room or put it on the sofa near Special Agent Simmons. During trial, Defendant only admitted to arranging a sale of marijuana, bringing a bag of marijuana into the room and placing the marijuana near Special Agent Simmons. He denied any involvement with the crack cocaine and asserted that Parks was the person who initiated the crack cocaine transaction, brought the crack cocaine into the room and placed it on the sofa arm that was close to Special Agent Simmons.

Finding "the testimony of Special Agent Simmons and Malone credible and Defendant's testimony not credible," the district court imposed a two-level increase for obstruction of justice.

"A sentencing enhancement for obstruction of justice may be based on the experienced trial judge's finding that the defendant lied to the jury." ***United States***

***v. Denton***, 434 F.3d 1104, 1114 (8th Cir. 2006). This is such a case. The district court did not clearly err in finding "by a preponderance of the evidence that Defendant perjured himself during trial by denying, under oath, any involvement in the distribution of crack cocaine."

Williams rests his entire acceptance-of-responsibility argument on his supposed "willingness to plead to the aiding and abetting alternative." In *United States v. Guerrero-Cortez*, 110 F.3d 647, 654-56 (8th Cir. 1997), defendant Soler twice offered to plead guilty to responsibility for two kilograms of cocaine, but the government rejected his offer because he would not take responsibility for five kilograms. At sentencing, the district court found him responsible for two kilograms, but denied his acceptance-of-responsibility motion because "the timing of the acceptance was at the time of sentencing and not at the time of trial." ***Id.*** at 654. Because Soler "consistently and repeatedly admitted that he was involved with two kilograms of cocaine" and "was at all times ready to plead guilty to two kilograms," this court held "it was clearly erroneous for the district court to conclude that Soler's acceptance of responsibility came at sentencing, and not at the time of trial." ***Id.*** at 655-56.

Unlike defendant Soler in *Guerrero-Cortez*, nothing Williams said, at the plea hearing or at trial, supports all the elements for aiding and abetting. In his closing argument, Williams concluded, "Before you return a verdict in this case, you have to know beyond any reasonable doubt that Josiah Williams on October 3, 2003, distributed crack cocaine or aided and abetted such distribution. I suggest to you that the evidence in this case demands one verdict, and that that verdict be not guilty." He "put[] the government to its burden of proof at trial by denying the essential factual elements of guilt, [was] convicted, and only [now] admits guilt and expresses remorse." **U.S.S.G. § 3E1.1 cmt. n.2**. The district court correctly denied his acceptance-of-responsibility motion.

## IV.

Williams next asserts that "the United States did not introduce sufficient evidence that the substance involved was 'crack cocaine' as opposed to 'cocaine base,'" resulting in an enhanced sentence under the Guidelines. At sentencing, a district court determines the drug type by a preponderance of the evidence. *United States v. Thompson*, 335 F.3d 782, 784 (8th Cir. 2003). This court reviews for clear error. *Id.*

This court uses the terms 'cocaine base' and 'crack' synonymously. *See, e.g.*, *United States v. Vesey*, 330 F.3d 1070, 1073 (8th Cir. 2003) ("Although 'crack' technically is one form of 'freebase cocaine,' it is the predominant form and that which the statute [21 U.S.C. § 841] intended to proscribe. The statute and our case law use the more generic term 'cocaine base' synonymously with the term 'crack.'") (citations omitted); *United States v. Crawford*, 83 F.3d 964, 966 (8th Cir. 1996) ("Congress intended the term cocaine base to refer to 'crack,' the smokable form of cocaine made by dissolving cocaine hydrochloride in water and baking soda and reducing it to a solid substance."). But crack is not the only type of cocaine base, and "forms of cocaine base other than crack cocaine have been imported into this country." *United States v. Robinson*, 462 F.3d 824, 825 (8th Cir. 2006). And "a number of circuits have held that the harsher statutory minimum sentences for cocaine base offenses are limited to those convicted of distributing crack, perhaps including other smokeable forms of cocaine." *Id.*

In the *Robinson* case, the drug certainly was crack. Robinson was indicted for distributing "cocaine base ('crack')." *Id.* at 826. At his plea hearing, Robinson called the substance "crack." *Id.* "Thus, even if the harsher minimum sentence mandated by 21 U.S.C. § 841(b)(1)(A) for 'cocaine base' offenses is limited to a conviction for distributing the crack form of cocaine base (an issue we need not decide), there was no plain error in sentencing Robinson to that minimum sentence." *Id.*

This case is similar. Williams referred to the drug as "crack cocaine" throughout the trial. The lab report described it as "off-white chunks" of "cocaine base." The Sentencing Guidelines explain that crack is "the street name for a form of cocaine base . . . usually appearing in a lumpy, rocklike form." **U.S.S.G. § 2D1.1(c) n.D**. Agent Simmons, trained in drug identification, called it crack. The indictment under which Williams was convicted charged him with distributing "approximately 18.99 grams of a mixture or substance containing a detectable amount of cocaine base (commonly called 'crack cocaine')." The district court's finding, by a preponderance of the evidence at sentencing, that the substance is crack, is not clearly erroneous.

V.

At sentencing, Williams already was under a five-year state sentence for theft, and a consecutive five-year state sentence for possession of marijuana with intent to deliver. The $2,400 Williams stole from Agent Simmons was the basis for the theft conviction. Williams argues that his federal sentence should run concurrent with, not consecutive to, these sentences. This court reviews "the district court's interpretation and application of § 5G1.3 de novo." *United States v. Hurley*, 439 F.3d 955, 957 (8th Cir. 2006).

The district court used these state convictions to determine Williams's criminal history category. Williams contends the theft is relevant conduct, and instead should have been used to calculate his base offense level. Under the Guidelines, if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . and that was the basis for an increase in the offense level," then "the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." **U.S.S.G. § 5G1.3(b)**. This policy protects a defendant "against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct." *Witte v. Untied States*, 515 U.S. 389, 405 (1995).

But "[c]onduct is not part of the offense of conviction when the conduct is a severable, distinct offense." *United States v. Blumberg*, 961 F.2d 787, 792 (8th Cir. 1992). The theft from Agent Simmons occurred one week after the original sale, in a separate transaction. The marijuana conviction derives from a search of Williams's residence five months later. These are "severable, distinct offenses." The district court was not required to run the federal sentence concurrent to the state sentences.

Yet Williams maintains that a "largely concurrent sentence is appropriate in light of all of the relevant factors," arguing that the district court should have exercised its discretion under Section 5G1.3(c). "Section 5G1.3 provides the court wide discretion to order a federal sentence to run consecutively to an undischarged state offense." *United States v. Mathis*, 451 F.3d 939, 941 (8th Cir. 2006). On the facts here, including the distinct theft and marijuana convictions, the district court did not err by making the federal sentence consecutive.

VI.

Williams also contends that the district court did not understand that it had authority to depart from the advisory Guidelines range based on the disparity between sentences for crack and powder cocaine. Rejecting Williams's request for a downward departure, the district court cited opinions of this court holding that Congress intended to impose harsher penalties for crack cocaine use. *See Robinson*, 462 F.3d at 825.

In an earlier appeal, this court affirmed Williams's sentence, noting that circuit precedent foreclosed the crack/powder sentence disparity argument. *United States v. Williams*, 486 F.3d 377, 385 n.3 (8th Cir. 2007), *citing United States v. Spears*, 469 F.3d 1166, 1176 (8th Cir. 2006) (en banc). The Supreme Court vacated this court's opinion and remanded for further proceedings in light of *Kimbrough v. United States*, 552 U.S. ___, 128 S.Ct. 558 (2007). *Williams v. United States*, 128 S.Ct. 882 (2008).

-11-

In *Kimbrough*, the Court held that a district court does not abuse its discretion at sentencing by concluding that "the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." *Kimbrough*, 128 S.Ct. at 575. After remand in this case, the Supreme Court held that a circuit court may not affirm a sentence when the district court rejects a crack/powder sentencing disparity argument on the basis of pre-*Kimbrough* circuit precedent and its understanding of Congressional intent. *Moore v. United States*, 129 S.Ct. 4, 5 (2008) (per curiam).

The district court's reasons for rejecting Williams's crack/powder sentence disparity argument are indistinguishable from those of the district court in *Moore*. While *Kimbrough* does not require the district court to impose a lower sentence, it does permit a lower sentence based on the disparity argument.

VII.

The conviction is affirmed, and the case remanded for resentencing.

_____

-12-